The case will be 06-5132, Floro v. United States. May I please report? My name is Thomas Sobecki and I represent the appellant, Kent Floro. I reserve three minutes for rebuttal. This is a takings claim alleging a violation of the Fifth Amendment to the United States Constitution. It has two components, a physical takings claim and a regulatory takings claim. Appellant or plaintiff survived summary judgment on the physical takings claim. Later, through a consent judgment, judgment was awarded in favor of the appellant against the government in the amount of $95,000. The appeal in this case is on the regulatory takings claim. The appellant did not survive summary judgment on the regulatory takings claim. The very brief statement of facts, the appellant owns a marina, a boat marina on the banks of what's called the Toussaint River in Ottawa County, Ohio. The Toussaint River is a very short river, not more than 10 miles. It goes into Lake Erie. It is alleged in the complaint that due to certain inappropriate actions and conduct by the government, there was a sand buildup at the mouth of the Toussaint River as it goes into Lake Erie. It's called Shoalink, and that essentially closed navigation into the river because boats could not go into the river. It put the marina out of business. Mr. Sobecki, what is the property right that allegedly has been taken? The property right is the waters of the Toussaint River, specifically that Mr. Floro has rights to navigability. The ingress-egress right, it's the right of the navigable waterway. Yes, sir. Is there a separate property right at issue here with respect to the business itself, the marina business of your client, or anything of that sort? I think they're interrelated, Your Honor. I could answer your question in an alternative way. I could say he has a property right in the waters of the Toussaint River, and as a denial of that property right or a taking, it closed up his business. If you look at the district court, Treasurer Legger's opinion, he said you do not allege that there's been a regulatory taking of the marina and the campground property itself. I mean, your business, for example. That, did you read from the judgment, Your Honor? Yeah, I'm reading from the opinion. Okay, is that on the regulatory taking section? Yes, it's in terms of your property interest. He said that you are alleging, okay, you describe your property interest as the interest as an upstream riparian owner in maintaining navigability. You don't allege that there's been a regulatory taking of the marina itself. I agree with that, sir. I agree with that characterization by the lower court. Well, what was destroyed here? Well, to be blunt, the marina, because boats could not come into the marina to do business because the shoaling at the mouth of the river, and it's alleged in the complaint of the property interest that Ken Floral had a property interest in the actual waters of the Toussaint River. I do not know how to be more succinct than that. Well, what the trial court held was that you don't have a personal property interest in navigability. It's a public right. Yes, let me discuss why I think the trial court, why the lower court was wrong. That was the basis of the lower court's decision, and it relied on a 1964 Ohio Supreme Court decision. Now, the lower court's decision was in September 2005. Four months later, in December 2005, the Ohio Supreme Court issued another decision, and this is the most important point of my oral argument here today. In December 2005, the Ohio Supreme Court in McNamara v. City of Ripon made a very important pronouncement related to this case, and that's the latest pronouncement of the law in the state of Ohio on a landowner's property interest in water. Now, the facts in the McNamara case was that the court held that a private landowner had a property interest in the groundwater underneath its property. Now, the court was clear that the groundwater that was the subject of the dispute was not actually titled property, but the court said the property owner had a property right in that groundwater that was not part of its land title. It was outside its title. It's not its property by title. Now, the court maybe said, well, okay, but how is that analogous to the Kenforo situation? Well, the court did comment specifically on this Kenforo case, but the court commented on a stream or river. The court drew an analogy between a property owner's interest in the groundwater that is outside the title to a landowner who is next to a stream or river. It declined that, quote, the landowner does not own the water in a stream that runs alongside his property, but he does own the right to the reasonable use of the stream as a part of his title to the real estate, close quote. In other words, the Ohio Supreme Court in December 2005 in the McNamara case said something a little bit different. Well, if you think if they were overruling their earlier case, they'd have mentioned the case. Not explicitly, Your Honor, but I would argue, yes, they did create a different situation in that the lower court in this case, the lower court didn't have the benefit of the McNamara case, but the McNamara case and the Ohio Supreme Court was not creating new law, it was simply making clear what the law was in the state of Ohio. And using that case, Kent Floro, using the words of the McNamara Ohio Supreme Court case, has a reasonable use of the stream or river, the Two St. River, as part of his title to the marina. That, gentlemen, is his property interest, which is the first of the two elements to prove a takings claim. The second element, the actual takings, was not part of the motion for some adjustment. The Sixth Circuit has held, in an Ohio case, involved a Dairy Queen, you know, a store where you go to get frozen ice cream, and there was a drive-in window in the Dairy Queen. You came off the street and you went up the drive-in window and then you went out the same on the same street, and because of traffic congestion or whatnot, the city blocked the street off. The Sixth Circuit held that that was a compensable taking of a property right. He didn't cite that case to us, but it seemed to me that that's similar to what's going on here. I think so. It didn't involve water. But I would have thought you would have pitched your case, which you say you don't, on the taking of your business. Your impact, your business is what dried up. Your no more marina business, no more campground business. That's your injury. That's where you're going to quantify your harm. I thought, in my opinion, that that goes to the second element, where I proved damages on the actual taking by the government. Was there a taking, which is a separate and second element of the two-element process? In other words, I had to first articulate a property interest, and that was the only issue before the lower court in this case. Does one have a property interest in one's business? I'm sorry, Your Honor? Does one have a property right in one's business? Let's assume that I run a Dairy Queen store. I own the property in Fee Simple. I have every license that's required to run the business. Oh, sure. I would say yes to that question. But you're not alleging that that was the property interest taken in this case? The ongoing conduct of your marina? Well, maybe through my inartful pleading of the complaint, and my inartful way I responded to the motion for summer judgment, I think we're saying it using different words to mean the same thing. If I'm in error, it was always my feeling that it was the water that was the property interest, the navigability of the water, the Toussaint River, and how that impacted the business. I thought that the issue of the value of the property is on the second element of the two-element process, which goes to damages, which goes to the issue of whether the government took the property. But that's an issue that needs to be tried before the court. That wasn't even part of the summer judgment motion. That's what I thought. I'd like to reserve the rest of my time for rebuttal. Okay. Good morning, Your Honor. May it please the Court, John Smeltzer for the United States. Your Honor, the opinion of the Court of Federal Claims should be affirmed for two fundamental reasons. First of all, Mr. Floro did not have a private property right in the nature of an easement in the navigability of the Toussaint River. And second, the United States did not regulate the marina property itself. On the first point, we look to Ohio law as the governing law because it's the source of the property rights issue. But you don't, in Ohio, when the city closed off access to the Dairy Queen, they weren't regulating the business. Your Honor, I'm afraid I'm not familiar with the particular Sixth Circuit case that you're addressing. I'm accurately describing it. Now, what would have happened? What would your view be if there had been no mention in this case at all about maintaining navigability, but Floro had simply come in and said, as he does in paragraph 12, his business suffered due to the actions of having to do with filling up the water and whatnot, that his business property with the improvements had been greatly damaged, that, in essence, the government took the property, destroyed his business, and deprived him of all economically viable use? Wouldn't that have pitched a regulatory takings claim? Your Honor, respectfully, no. And this Court's opinion in Eric Pegasus controls that point. And that's the second point we raised, which is that the United States did not regulate this property. What this Court stated clearly in Eric Pegasus, based on the Supreme Court's opinion in Omni, a commercial company, is that there is a significant difference between an injury to one's property interest and a taking of one's property interest. And you can't show a taking simply by showing that there's economic injury, which is a result of government action. Remember that the circumstances of this case are not that Mr. Floro applied for a permit under a government regulatory scheme that specifically governed the use of his property. There was no such regulatory action. What would happen, say, for example, there was a picture the other day in the newspaper of Lake Mead that showed a dock that has sat on dirt because the lake's gone down in value. What would happen if you had a marina on a lake or on some body of water that the Corps of Engineers can control and they decide to draw the lake down very substantially for some valid purpose? And they do so. And as a result, the marina is totally out of business. Are you telling me that that marine owner couldn't file a takings claim that would pass muster on a motion to dismiss for a failure in the state of property interest? My business is destroyed? Your Honor, under the holding of this court in Air Pegasus, unless there's some regulation of the property interest, the marina itself, there is no basis for a takings claim. There would be a claim of economic injury as a result of government action, which again this court specifically held in Air Pegasus was insufficient to support a taking. Remember that case involved a heliport here in the District of Columbia that was effectively shut down as a result of the FAA's order post 9-11 to cut off commercial airspace. And there was no question there, as in your example, that there was an impact on that property. But what this court held is that there was no regulation of the property. And again, what happened here was the government granted a permit to a property owner on Lake Erie. That property owner then constructed a revetment, which allegedly caused shoaling at the mouth of the river, which then allegedly blocked navigation up the river, which then allegedly damaged the business at issue. There was no regulation of the business itself. What happened was there was consequential or alleged regulatory action. And this case is much easier, in fact, than the case in Air Pegasus because there, the regulatory action by the FAA was much more closely aligned with the actual business at issue. And there, again, the business was operating a heliport, which is comparable to the operation in the marina. And in that case, this court said that the regulatory action of the FAA was not regulating the leasehold. And therefore, there was no or could be no taking of the property itself. Then the court went on and addressed the second question, which was the first question in this case, was whether there was some sort of property right in access to navigable airspace or in navigation in the airspace itself. And again, there's two ways that these taking questions can be framed. One is, is there a taking, as Your Honor is addressing right now in the marina itself? And then the second issue is whether there is a taking of a private property right in the navigation, either in airspaces in Air Pegasus or in the navigation up and down the river in the present case. This court addressed both of those questions in Air Pegasus. And on the second one... What you would say is that this case is like Air Pegasus in that what was taken wasn't property and there's a line in Air Pegasus that says the harm in Air Pegasus was the result of the government's purported taking of other people's property. That is to say the public right to fly in the sky. Right. In Air Pegasus there was no factual dispute as to whether there was effectively a taking of that right. We do not concede in this case, and again it's a case on summary judgment, that there was a taking of navigation up and down the river. That's the allegation. What we are saying is even if you concede that point... Your argument is a matter of fact that it's still navigable. Yes. But even if you concede the point that the right of navigation was blocked at the mouth of the Tucson River where it meets the... The trial court reached the conclusion that to the extent that you look to Ohio laws as the source of his property rights and the rights that are pertinent to his ownership of waterside property, his riparian rights... What about the individual from the riparian rights? Under Ohio it's clear that you have a right to ingress and egress to the navigation portion of the river. If it had been so that it was simply impossible for Mr. Floro to get from the lake, if you will, he would have a takings case for his own individual riparian right. No, you're not. Why not? The riparian right is the right under what Ohio recognizes as a right to get from your property to the navigable portion of the stream that's adjacent to your property, but not necessarily up and down the stream. And that was the case in Masheter directly on point. That's the 1963 case that Mr. Sebecki mentioned. He had a right to get to the navigable portion of the stream because of government conduct. Then he'd have a cause of action for his own individual inability to access. And that's where there's some distinction between Air Pegasus because this court in Air Pegasus found no right of access either to the navigable airspace. But in this case, we're not talking about with respect to the obstruction at the mouth of the Tucson River on Lake Erie. We're not talking about an obstruction of his ability to get to the navigable portion of the Tucson River. We're talking about his right to navigate up and down the Tucson River. And again, in Masheter, that's a case where the government built a bridge that blocked navigation from a marina downstream and blocked commerce at the marina. And what the court said is there's no private property right in navigation on the river. Ohio law couldn't be clearer on that point. And counsel has referred this court to recent cases in McNamara. The recent Ohio Supreme Court case in McNamara, that's completely inapposite. That case is a case that involved the consumptive use of groundwater. And what the court held was as a property owner, you do have an appurtenant right to the use of groundwater. If there's a physical interference, the government here, in that case the city of Britain, pumps all the groundwater, then there's no groundwater that you can pump on your own property, that potentially could be taken. And the court referred to, the Ohio court referred to the Supreme Court's decision in Dugan v. Rank, which is a similar kind of case involving surface water. But again, it was an issue about consumptive use of surface water. And it was a case where the owner had a right, an established right to divert and consumptively use water. And there's a question about interference with that water right upstream. And again, the notion that physical interference with the water right, that is a right to consumptively use on your property water you divert from a stream, that is, under state law, a right that you can develop as a matter of state law. Those opinions don't draw into question the Ohio Supreme Court's clear statement in Masher, that there is no similar right that's pertinent to your property right that's related to the public's right to navigation up and down the river. Is there a regulation of the private property in this case? Well, the McNamara case was a case of alleged physical interference, where the city of Britain wasn't necessarily regulating the use of groundwater, it wasn't telling the landowner you can't use groundwater, it was pumping groundwater. And there was an allegation, if I understand the facts of that case, there was an allegation that the city's pumping of groundwater interfered then with that particular landowner's pumping. Physical taking of the water? It was a physical, like in the case where if you've got a, if you're a downstream user of water rights, which you can divert from a stream and consumptively use, if an upstream user, the government takes all the water rights, cuts off the stream completely, could potentially interfere with your water rights in that case. But I don't believe McIntyre was a regulatory case. If it was a regulatory case, again, the distinction, critical distinction is Ohio recognizes a property owner's appropriate right to the consumptive use of groundwater. How can you explain that Judge Allegra felt that there had been no allegation of a regulatory taking of the marina in the light of the allegations in paragraphs 12, 13 and 16 of the complaint? Well, it was a matter of the way the case was briefed and the matter of Mr. Sebecki's concession and the way he had argued the case was it was related to the right to navigate on the water. If you give him the benefit of the doubt,  not going to be an allegation that as a result of government actions, some government acts somewhere causes economic injuries to your property, is insufficient by itself to state a taking of property that's compensable under the Fifth Amendment. There must be a regulation of the property itself to impose a zoning regulation, to deny a permit to an owner, to do something that specifically regulates the property. And here, I believe Mr. Sebecki was focusing on the right to property that was a right for the owner   a right to have property that was a right for the owner to have a right to have a property that was a right for the owner to have a property that was    the owner to have a property that was a right for the owner to have a property that was a right for the  to have    was a right for the owner to have a property that was a right for the owner to have          to have a property that was a right for the owner to have a property that was a right for